IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **APACHE STAINLESS EQUIPMENT CORPORATION**<br>200 West Industrial Drive<br>Beaver Dam, Wisconsin 53916<br>           **Plaintiff,**<br><br>VS.<br><br>**INFOSWITCH, INC.**<br>2381 Executive Center Drive<br>Boca Raton, Florida 33431<br>and/or<br>2100 New River Center, 200 E Las Olas Boulevard, Fort Lauderdale, Florida 33301<br><br>           **Defendant.** | CIVIL NO: |

## COMPLAINT

### PARTIES TO THE CAUSE OF ACTION

1. Plaintiff, Apache Stainless Equipment Corporation ("Apache"), is a corporation with a principal place of business located at 200 West Industrial Drive, Beaver Dam, Wisconsin, 53916.

2. Defendant, Infoswitch, Inc. ("Infoswitch"), was and/or is a legal entity, partnership, limited partnership, corporation, professional corporation, professional association, proprietorship, and/or other similar entity, organized and doing business under the laws of the state of Florida, with a principal place of business at 2381 Executive Center Drive, Boca Raton, Florida 33431.

3. Alternatively, Defendant, Infoswitch, Inc. was and/or is a legal entity, partnership,

limited partnership, corporation, professional corporation, professional association, proprietorship, and/or other similar entity, organized and doing business under the laws of the state of Florida, with a principal place of business at 2100 New River Center, 200 E Las Olas Boulevard, Fort Lauderdale, Florida 33301

4. Defendant Infoswitch Inc. is a defendant in the underling lawsuit brought in Pennsylvania.

5. Defendant Infoswitch, Inc. regularly conducts business in the state of Pennsylvania and is/was engaged in the food industry equipment business.

## STATEMENT OF JURISDICTION AND VENUE

6. Jurisdiction over this action exists under 28 U.S.C. §1332 based on diversity of citizenship and an amount in controversy that exceeds $75,000.00 exclusive of interest and costs.

7. Venue is proper in this district pursuant to 28 U.S.C. §1391 because a substantial part of the events giving rise to this claim occurred in Pennsylvania and this district.

## STATEMENT OF MATERIAL FACTS

### A. Procedural Background

8. This matter evolves out of an underlying claim for personal injuries by Jose Natal ("Mr. Natal") stemming from an alleged incident which took place at Devault Foods located at 1 Devault Lane, Devault, Pennsylvania 19432on May 20, 2015. See, a true and correct copy of the underlying Complaint attached hereto without admission as Exhibit A.

9. In the underlying action, numerous amended and joinder Complaints were filed, ultimately including negligence and/or strict liability claims against the below twelve (12) defendants:

    1. Devault Foods;
    2. Mepaco, Inc.;
    3. Apache Stainless Equipment Corporation;
    4. Chemetron Corporation;
    5. Chemetron Investments, Inc.;
    6. Chemetron Process Equipment, Inc.;
    7. Beacon Metal Products, Inc.;
    8. Beacon Enterprises, Inc.;
    9. United Dominion Industries, Inc. f/k/a AMCA International Corporation;
    10. SPX Corporation f/k/a United Dominion Industries, Inc.;
    11. Infoswitch, Inc.; and
    12. Sunbeam Products, Inc. d/b/a Jarden Consumer Solutions.

    See, the Second Amended Complaint in the underlying action attached hereto without admission as Exhibit B.

10. Of these twelve (12) defendants, eleven (11) Defendants were claimed to be responsible for manufacture, design and/or sale of the screw conveyor at issue in this case. Id.

11. Mr. Natal alleges that he was injured by a screw conveyor at Devault Foods while in the course of his employment sanitizing the piece of equipment. See, Exhibit B.

12. Mr. Natal alleges that the screw conveyor was manufactured, designed, and sold by defendants MEPACO, Apache, Chemetron Corporation, Chemetron Investments, Chemetron Process Equipment, Beacon Metal Products, Beacon Enterprises, United Dominion, SPX Corporation, Infoswitch, and/or Sunbeam, or their respective successor(s)-in-interest or predecessor(s)-in interest. See, Exhibit

B ¶40.

13. Chemetron Process Equipment, Inc. sold the subject screw conveyor to Defendant Devault on November 25, 1980. See, the Purchase Order bates stamped Chemetron00014 attached hereto as Exhibit C.

14. The aforementioned purchase order was from Chemetron Process Equipment, Inc. located in Oakland, California. See, Exhibit C.

### B. Facts Pertaining to the various Asset Purchase Agreements

15. After the sale of the subject screw conveyor to Devault, Chemetron Process Equipment, Inc. (formerly Chemetron Corporation) entered an Asset Purchase Agreement with AMCA International Corporation ("Chemetron/AMCA Asset Purchase Agreement ") on December 9, 1982. See, the Chemetron/AMCA Agreement attached hereto as Exhibit D, bates stamped SPX0001-00200.

16. The Chemetron/AMCA Asset Purchase Agreement specifically states that Chemetron Process Equipment, Inc. sold to AMCA certain real estate, fixed assets, contracts, capital stock, rights, and trademarks. See, Exhibit D at SPX0001-0004.

17. On June 14, 1983, AMCA International Corporation ("AMCA" or "Seller") entered into an Asset Purchase Agreement with Beacon Metal Products, Inc. ("Beacon Metal" or "Purchaser") for the sale of certain assets, including certain Mepaco related assets. See, the AMCA/Beacon Metal June 14, 1983 Asset Purchase Agreement attached hereto without exhibits as Exhibit E, bates stamped SPX00201-00241.

18. Pursuant to a correspondence dated August 1, 1983, which was signed by both

Mepaco and Beacon Metal on August 16, 1983, any potentially liabilities regarding claims for personal injury were clarified as follows:

> This letter will serve to confirm the Agreement between AMCA International Corporation ("AMCA") and Beacon Metal Products, Inc. (and its related entity, MEPACO, INC., both of which are herein collectively referred to as "Beacon"), pertaining to the above referenced matter as it relates to the sale of the MEPACO assets by AMCA to BEACON.
>
> The parties hereby agree as follows regarding claims for personal injury or damage to property based on or arising from occurrences, existing circumstances or products sold by the MEPACO Operation (as defined in the contract between ACMA and BEACON dated June 14, 1983):
>
> 1. AMCA shall be responsible for any claims of the nature described in the preceeding paragraph arising from those products shipped from December 9, 1982 through June 23, 1983 and will indemnify and hold harmless Beacon Metal Products, Inc., a Delaware corporation, and MEPACO, Inc., an Illinois corporation from any such claims;
>
> 2. Said responsibility of AMCA shall continue in effect through June 23, 1993 and thereafter Beacon shall indemnify and hold harmless AMCA from any and all claims arising from products shipped by the MEPACO Operation after December 9, 1982.

See, a copy of the August 1, 1983 correspondence attached hereto as Exhibit F at bates stamp SPX00642-00643.

### C. Facts Pertaining to the Settlement Agreement dated December 15, 1993

19. On December 15, 1993, Beacon Metal Products, Inc., United Dominion Industries, Inc. f/k/a AMCA International Corporation, Infoswitch, Inc., and Sunbeam-Oster Company, Inc. entered into a Settlement Agreement and Mutual General Release (hereinafter "Settlement Agreement"). See, a copy of the December 15, 1993 Settlement Agreement is attached hereto as Exhibit G at bates stamp CHEM000211-000230.

20. The Settlement Agreement addressed litigation that arose:

> out of the purchase and sale of certain assets, first sold by Chemetron Process Equipment, Inc. to AMCA International Corporation (n/k/a United Dominion) under a purchase agreement dated December 9, 1982 (the "First Purchase Agreement"); and later, sold by AMCA to Beacon pursuant to a purchase agreement dated June 23, 1983 (the "Second Purchase Agreement").

See, Exhibit G at CHEM000211.

21. Further:

> the First Purchase Agreement and Second Purchase Agreement both contain provisions (the "Indemnification Provisions") which it is claimed indemnify the purchaser for any liabilities or obligations arising out of product liability claims related to, among other things, certain manufacturing equipment and/or inventory which was sold prior to or on December 9, 1982.

See, Exhibit G at CHEM000212.

22. The Settlement Agreement further states that Allegheny International, Inc. ("Allegheny") guaranteed all of Chemetron's obligations under the First Purchase Agreement, **including the Indemnification Provisions**. See, Exhibit G at CHEM000212.

23. The Settlement Agreement states that "subsequent to the First Purchase Agreement, **Infoswitch acquired substantially all of the assets and liabilities of Chemetron, including any and all obligations arising out of the First Purchase Agreement and the Guarantee**" (emphasis added). See, Exhibit G at CHEM000212.

24. The Settlement Agreement confirms that "Beacon assigned all of its right, title and interest in, to, and under the Second Purchase Agreement to Mepaco." See,

Exhibit G at CHEM000212.

25. Infoswitch and Allegheny subsequently filed petitions for Chapter 11 reorganization on May 3, 1988. See, Exhibit G at CHEM000212.

26. During the course of Reorganization, **"Infoswitch reinstated its obligations arising under the First Purchase Agreement and Allegheny reinstated its obligations under the Guarantee"** (emphasis added). See, Exhibit G at CHEM000212.

27. Allegheny subsequently transferred all of its assets and liabilities to Sunbeam, including those arising under the Guarantee. See, Exhibit G at CHEM000212.

28. The December 15, 1993 Settlement Agreement was entered to resolve issues related to entities responsible for pending product liability cases and potential product liability cases. See, Exhibit G.

29. The parties thereafter bargained for and executed a Release memorializing the following agreement as it pertains to potential claims:

> (i) Beacon, Mepaco, United Dominion, Infoswitch and/or Sunbeam, whichever receives initial notice of a Products Claim or Potential Claim, shall notify the other Parties of such Products Claim or Potential Claim (a "Claim")
>
> (ii) Upon notice, Mepaco shall have the initial burden of determining the date of sale of the Equipment which is the subject of such Claim and whether such Claim is one that qualifies for indemnification under the indemnification provisions contained in the First and/or Second Purchase Agreements (the "Indemnification Provisions). Mepaco shall be solely responsible for all costs or expenses incurred in making such determination;
>
> (iii) If Mepaco determines that the **Equipment was sold before December 9, 1982, and that such Claim**

>    **qualifies for indemnification under the Indemnification Provisions contained in the First Purchase Agreement** (the "Determination"), Mepaco shall immediately notify Infoswitch, Sunbeam, and Untied Dominion of such Determination and shall, as soon as reasonably possible thereafter, provide Infoswitch, Sunbeam and United Dominion with the documentation upon which the Determination was based, including, without limitation, photocopies of the log book relating to the Equipment at issue, if available (the "Documentation").
>
> (iv) Within 20 business days of its receipt of the Documentation, Infoswitch shall either accept or reject Mepaco's Determination by notifying Mepaco, United Dominion, and Sunbeam, in writing, of such acceptance or rejection (the "Resolution Date").
>
>    (a) If Infoswitch shall accept Mepaco's Determination, Infoswitch shall immediately take over the defense of the Claim which is the subject of the Determination, and shall be responsible for all reasonable costs which were incurred in defending said Claim after the date of Infoswitch's receipt of the Documentation.

See, Exhibit G at CHEM000218-00219 (emphasis added).

30. Furthermore, the Settlement Agreement specifically states that:

> any right, title or interest of any corporate Party arising out of this Agreement may be assigned to any corporation controlling, controlled by, or under common control with such corporate Party, or succeeding to the business and substantially all of the assets of such corporate Party. Subject to the foregoing, this Agreement shall be binding and shall inure to the benefit of the Parties and their respective heirs, legatees, devisees, personal representatives, successors and assigns.

See, Exhibit G at CHEM000228.

   **D. Facts Pertaining to the Asset Purchase Agreement Dated September 7, 1993 Between Apache Stainless Equipment and Beacon Enterprise,**

**Inc., Beacon Metal Products, Inc., Mepaco, Inc. and Vortron, Inc. and John P. Henebry**

31. On September 7, 1993, Apache Stainless Equipment ("Buyer") and Beacon Enterprise, Inc., Beacon Metal Products, Inc., Mepaco, Inc. and Vortron, Inc. ("Sellers") and John P. Henebry entered into an Asset Purchase Agreement ("Apache/Beacon Asset Purchase Agreement"). See, a copy of the Apache/Beacon Asset Purchase Agreement attached hereto as Exhibit H.

32. Through the Apache/Beacon Asset Purchase Agreement, Apache purchased certain assets from the Sellers, including the rights to the "Mepaco" trademark and tradename that Beacon had acquired from AMCA International Corporation. See, Exhibit H page 2.

### E. Additional Material Facts

33. On June 5, 2018, a Stipulation was fully executed by and between all of the parties to the underlying lawsuit whereby Infoswitch assumed legal responsibility for all claims related to the screw conveyor (hereinafter "Infoswitch Stipulation"). See, a copy of the Infoswitch Stipulation attached hereto as Exhibit I.

34. All parties agree:

> Infoswitch, Inc. is legally responsible for any (1) manufacturing, design or warning defects or (2) negligence in relation to the design, manufacture or warnings related to the screw conveyor in use at the Devault Foods facility on May 20, 2015 bearing Serial No. 10472, as alleged in Plaintiff's Second Amended Complaint.

See, Exhibit I.

35. Further, the stipulation states, "If any party succeeds in their claims sounding in product liability or negligence involving the screw conveyor (no liability is

admitted), then liability shall rest with Infoswitch, Inc." See, Exhibit I.

36. Moreover, Infoswitch previously accepted the tender request for defense and indemnification of Mepaco, Inc. pursuant to the terms of the December 15, 1993 Settlement Agreement on or about May 30, 2017.

37. Counsel for Infoswitch and Chemetron Corporation and Chemetron Investments, Inc. in the underlying case entered an appearance on behalf of Mepaco, Inc. on June 7, 2017. See, a copy of the Entry of Appearance attached hereto as Exhibit J.

38. To date, Infoswitch has refused to tender from Apache for defense and indemnification regarding the underlying Complaint at issued filed by Mr. Natal, which necessitated the filing of this action.

39. Infoswitch is required to provide a defense and indemnify Apache in the underlying matter.

## COUNT I

### Apache Stainless Equipment Corporation vs. Infoswitch, Inc.

### BREACH OF CONTRACT

40. Apache incorporates paragraphs one through forty-one of the foregoing Complaint, as though fully set forth in its entirety.

41. Defendant Infoswitch, Inc. is required to indemnify and defend Apache Stainless Equipment Corporation against certain losses including the type at issue in the underlying matter in accordance with the Contract at issue. See, Exhibit G, CHEM000218-00219; CHEM000228.

42. This obligation arises out of Infoswitch, Inc.'s contractual agreement with Mepaco, Inc., which inures to Apache's benefit pursuant to additional language in the Contract which states:

> any right, title or interest of any corporate Party arising out of this Agreement may be assigned to any corporation controlling, controlled by, or under common control with such corporate Party, or succeeding to the business and substantially all of the assets of such corporate Party. Subject to the foregoing, this Agreement shall be binding and shall inure to the benefit of the Parties and their respective heirs, legatees, devisees, personal representatives, successors and assigns.

See, Exhibit G at CHEM000228.

43. If Mr. Natal's Complaint in the underlying matter or certain portions of it are proven true and correct at the time of trial in that matter, Defendant Infoswitch, Inc. must be found solely liable for any and all damages incurred by Mr. Natal as they had a contractual duty to indemnify and defend Apache pursuant to the December 15, 1993 Settlement Agreement Contract.

44. If Plaintiff in the underlying matter, Mr. Natal's Complaint or certain portions of it are proven true and correct at the time of trial in that matter, Defendant Infoswitch, breached its contractual duty under the applicable Agreement by failing to properly indemnify and defend Apache for the claims being presented by Jose Natal.

45. As a direct and proximate result of Infoswitch's breach of contract, Plaintiff Apache Stainless Equipment Corporation has suffered damages including counsel fees and costs relative to its defense of the Natal matter, which continue to increase as the underlying case moves forward.

46. As a direct and proximate cause of Infoswitch's breach of contract, Plaintiff Apache has incurred additional costs including legal fees relative to the filing of the instant Declaratory Judgment Action.

47. As a direct and proximate cause of Infoswitch's breach of contract, Plaintiff Apache has suffered additional damages as it may be obligated to pay money damages to the Plaintiff, Natal by way of a jury verdict or settlement if he is successful at the time of trial.

Wherefore, Plaintiff, Apache Stainless Equipment Corporation demands that judgment be entered in its favor and against all Defendants in excess of Fifty Thousand Dollars ($50,000) together with a determination that Defendant is obligated to defend and indemnify Apache Stainless Equipment Corporation relative to the underlying matter (Jose Natal v. Apache Stainless Equipment Corporation, et. al. Court of Common Pleas Philadelphia County, December Term 2015, No. 01735) including the reimbursement of any and all costs and counsel fees relative to the underlying action and the instant Declaratory Judgment Action.

        **REILLY, MCDEVITT & HENRICH, P.C.**

By:    */s/ Susan M. Valinis*
       Susan M. Valinis, Esquire
       Identification No. 86685
       svalinis@rmh-law.com
       Vincent F. Reilly, Esquire
       Identification No. 38401
       vreilly@rmh-law.com
       Reilly, McDevitt & Henrich, P.C.
       The Widener Building, Suite 410
       One South Penn Square
       Philadelphia PA  19107
       Tel (215) 972-5200
       Molly C. Reilly, Esquire
       Identification No. 313713

mreilly@rmh-law.com
Reilly, McDevitt & Henrich, P.C.
The Widener Building, Suite 410
One South Penn Square
Philadelphia PA  19107
Tel (215) 972-5200
Attorneys for Defendant,
Apache Stainless Equipment Corporation

## VERIFICATION

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**REILLY, MCDEVITT & HENRICH, P.C.**

By: */s/ Susan M. Valinis*
Susan M. Valinis, Esquire
Identification No. 86685
svalinis@rmh-law.com
Vincent F. Reilly, Esquire
Identification No. 38401
vreilly@rmh-law.com
Reilly, McDevitt & Henrich, P.C.
The Widener Building, Suite 410
One South Penn Square
Philadelphia PA  19107
Tel (215) 972-5200
Molly C. Reilly, Esquire
Identification No. 313713
mreilly@rmh-law.com
Reilly, McDevitt & Henrich, P.C.
The Widener Building, Suite 410
One South Penn Square
Philadelphia PA  19107
Tel (215) 972-5200
Attorneys for Defendant,
Apache Stainless Equipment Corporation

Dated: November 8, 2018

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **APACHE STAINLESS EQUIPMENT CORPORATION**<br>200 West Industrial Drive<br>Beaver Dam, Wisconsin 53916<br>**Plaintiff,**<br><br>VS.<br><br>**INFOSWITCH, INC.**<br>2381 Executive Center Drive<br>Boca Raton, Florida 33431<br>and/or<br>2100 New River Center, 200 E Las Olas Boulevard, Fort Lauderdale, Florida 33301<br><br>**Defendant.** | **CIVIL NO:** |

## CERTIFICATE OF SERVICE

I, Susan M. Valinis, hereby certify that I caused to be served the **Complaint for Declaratory Judgment** with attachments with regard to the above-captioned matter by placing a true and correct copy thereof in a sealed envelope, with postage thereon fully prepaid and causing the same to be mailed by certified mail to the persons at the address set forth below. I declare under penalty of perjury that the foregoing in true and correct. Executed on November 8, 2018.

**INFOSWITCH, INC.**
2381 Executive Center Drive
Boca Raton, Florida 33431

and

**INFOSWITCH, INC.**
2100 New River Center

200 E Las Olas Boulevard
Fort Lauderdale, Florida 33301

**REILLY, MCDEVITT & HENRICH, P.C.**

By: ___*/s/ Susan M. Valinis*___
      Susan M. Valinis, Esquire
      Identification No. 86685
      svalinis@rmh-law.com
      Vincent F. Reilly, Esquire
      Identification No. 38401
      vreilly@rmh-law.com
      Reilly, McDevitt & Henrich, P.C.
      The Widener Building, Suite 410
      One South Penn Square
      Philadelphia PA  19107
      Tel (215) 972-5200
      Molly C. Reilly, Esquire
      Identification No. 313713
      mreilly@rmh-law.com
      Reilly, McDevitt & Henrich, P.C.
      The Widener Building, Suite 410
      One South Penn Square
      Philadelphia PA  19107
      Tel (215) 972-5200
      Attorneys for Defendant,
      Apache Stainless Equipment Corporation