# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **APACHE STAINLESS** | : | |
| **EQUIPMENT CORPORATION**, | : | Case No.  18-cv-04879-JMY |
| | : | |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| **INFOSWITCH, INC.**, | : | |
| | : | |
| *Defendant* | : | |

## MEMORANDUM

**YOUNGE, J.**                                                                                        **JULY 21, 2020**

This is a declaratory judgment action pertaining to an underlying personal injury case filed by Jose Natal against both Plaintiff Apache Stainless Equipment Corporation (hereinafter, "Apache") and Defendant Infoswitch, Inc. (hereinafter, "Infoswitch").  (*See* Compl. ¶¶ 4, 8-9, ECF No. 1.)  Infoswitch denied Apache's request for defense and indemnification in the underlying litigation, which led to the instant action before this Court.  (*Id*. ¶¶ 38-39.)

Now before this Court are two cross-motions: (1) Apache's Motion for Summary Judgment ("Plf. Mot.," ECF No. 35), and (2) Infoswitch's Motion for Summary Judgment ("Def. Mot.," ECF No. 36).  The Court has considered the submissions made in support of and in opposition to the parties' respective motions, and finds this matter appropriate for resolution without oral argument.  Fed. R. Civ. P. 78; L.R. 7.1(f).  For the reasons set forth below, Apache's motion will be denied, Infoswitch's motion will be granted, and judgment will be entered for Infoswitch.

**I. BACKGROUND**[1]

    **A.**     **Factual Background**[2]

"Jose Natal filed a [c]omplaint in the Court of Common Pleas of Philadelphia County on December 18, 2015 seeking damages" against multiple defendants, including: "Devault Foods [(Natal's employer)], Mepaco, Inc., Apache[,]" Infoswitch, Chemetron Corporation, Chemetron Investments, Inc., Chemetron Process Equipment, Inc., Beacon Metal Products, Inc., Beacon Enterprises, Inc., United Dominion Industries, and Sunbeam Products, Inc. "for injuries he allegedly sustained when his legs became caught in a screw conveyor that he was cleaning and sanitizing on May 20, 2015." (Plf. SUF ¶¶ 1-2, ECF No. 35; Def. SUF ¶ 13, ECF No. 36; *see also* Compl. Ex. A, ECF No. 1-4.) On April 16, 2019, the lawsuit resulted in a jury verdict of $9,109,785.00 in favor of Jose Natal. (Def. SUF ¶ 13; *see also Natal v. Devault Foods, et al.*, Phila. Cty. Ct. Com. Pl. Docket No. 151201735, available at https://fjdefile.phila.gov/efsfjd/zk_fjd_public_qry_03.zp_dktrpt_frames (last visited July 16, 2020).)

The subject screw conveyor "was manufactured and sold to Devault by Chemetron Process Equipment, Inc., doing business under the trade name 'Mepaco,' on November 25, 1980." (Plf. SUF ¶ 4; ECF No. 1-6.) After the sale of the subject screw conveyor, "the Mepaco trade name was sold three times, culminating in Apache as its current owner." (Plf. SUF ¶ 6; *see* Def. SUF ¶¶ 1, 3, 5.)[3] As to the most recent transfer of Mepaco, "[o]n September 7, 1993,

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

[2] Unless indicated otherwise or where attributed to one party or another, the facts recited herein are undisputed. To the extent any of the facts are disputed, the Court concludes they are not material to the disposition of the pending motions. Further, to the extent the Court relies on evidence to which the parties have objected, the Court has considered and overruled those objections—unless discussed herein. As to any remaining objections, the Court finds it unnecessary to rule on them because the Court does not rely on any disputed evidence.

[3] Specifically, "[o]n December 9, 1982, a [p]urchase [a]greement [] was entered into between Chemetron Process Equipment, Inc., and AMCA International Corporation." (Def. SUF ¶ 1; Compl. Ex.

Beacon sold Mepaco assets, including the Mepaco trademark and trade name, to Apache." (Plf. SUF ¶ 16; Def. SUF ¶¶ 5-6; 1993 Asset Purchase Agreement.) Shortly thereafter, on December 15, 1993, various entities, including Beacon and Infoswitch, but specifically *not* Apache, "entered into a [s]ettlement [a]greement [and mutual release] to resolve a lawsuit concerning responsibility for pending products liability cases and potential products liability cases." (Plf. SUF ¶ 20; Def. SUF ¶ 7; 1993 Settlement Agreement.)[4] The 1993 Settlement Agreement sets forth a procedure for handling potential claims, which provides in relevant part:

> C. <u>Procedure for Handling Potential Claims</u>.
>
> (i) Beacon, Mepaco, United Dominion, Infoswitch and/or Sunbeam, whichever receives initial notice of a Products Claim or Potential Claim, shall notify the other Parties of such Products Claim or Potential claim (a "Claim");
>
> (ii) Upon notice, Mepaco shall have the initial burden of determining the date of sale of the Equipment which is the subject of such Claim and whether such Claim is one that qualifies for indemnification under the indemnification provisions contained in the First and/or Second Purchase Agreements (the "Indemnification Provisions"). Mepaco shall be solely responsible for all costs or expenses incurred in making such determination;

---

D, ECF No. 1-7.) Thereafter, "[o]n June 14, 1993, an [a]sset [p]urchase [a]greement [] was entered into between AMCA and Beacon Metal products, Inc." (Def. SUF ¶ 3; Compl. Ex. E, ECF No. 1-8.) And finally, on September 7, 1993, an asset purchase agreement was entered into between Apache, Beacon Enterprises, Inc., Beacon Metal, Mepaco, Inc., Vortron, Inc., and John Henebrey. (Def. SUF ¶ 5; "1993 Asset Purchase Agreement," Compl. Ex. H, ECF No. 1-11.) Furthermore, "[a]fter the [initial] sale of Mepaco from Chemetron Process Equipment, Inc. to AMCA on December 9, 1982, Infoswitch acquired certain assets and liabilities of Chemetron Process Equipment, Inc., including Chemetron Process Equipment Inc's 'obligation arising out of the'" December 9, 1982 sale. (Plf. SUF ¶ 24; *see also* "1993 Settlement Agreement," Compl. Ex. G, ECF No. 1-10.)

[4] "The Settlement Agreement arose from a May 1, 1991 lawsuit filed by Mepaco against United Dominion concerning the sale of assets[.]" (Def. SUF ¶ 8); *see also* Amended Complaint, *Mepaco, Inc. v. United Dominion Industries, Inc.*, No. 91-cv-2605-WRA (N.D. Ill. July 10, 1991), ECF No. 13. In this lawsuit, Mepaco claimed that United Dominion was responsible to indemnify and defend Mepaco for any obligations arising out of products liability claims. (*See* 1993 Settlement Agreement at 4.) In resolving the 1991 lawsuit, the 1993 Settlement Agreement contemplated certain pending "product liability claims relating to the [e]quipment" that were filed in courts throughout the United States against Beacon, Mepaco, United Dominion, Infoswitch, and Sunbeam, as well as future product liability claims. (*Id*. at 3-4.)

3

> (iii) If Mepaco determines that the Equipment was sold before December 9, 1982, and that such Claim qualifies for indemnification under the Indemnification Provisions contained in the First Purchase Agreement (the "Determination'"), Mapaco shall immediately notify Infoswitch, Sunbeam, and United Dominion of such Determination and shall, as soon as reasonably possible thereafter, provide Infoswitch, Sunbeam and United Dominion with such documentation upon which the Determination was based, including without limitation photocopies of the log book relating to the Equipment at issue, if available (the "Documentation").
>
> (iv) Within 20 business days of its receipt of the Documentation, Infoswitch shall either accept or reject Mepaco's Determination by notifying Mepaco, United Dominion, and Sunbeam, in writing, of such acceptance or rejection (the "Resolution Date").
>
> > (a) If Infoswitch shall accept Mepaco's Determination, Infoswitch shall immediately take over the defense of the Claim which is the subject of the Determination, and shall be responsible for all reasonable costs which were incurred in defending said Claim after the date of Infoswitch's receipt of the Documentation.

(1993 Settlement Agreement at 10; *see* Plf. SUF ¶ 25; *see also* Def. SUF ¶ 10.) The 1993 Settlement Agreement also allows for an assignment of rights under the agreement in specific circumstances (hereinafter, the "Assignment/Successorship Clause"), which states:

> 7.   Binding Effect and Benefit.
>
> This Agreement may not be assigned by any of the Parties, whether by operation of law or otherwise, without the prior written consent of the other Parties, except that any right, title or interest of any corporate Party arising out of this Agreement may be assigned to any corporation controlling, controlled by, or under common control with such corporate Party, or succeeding to the business and substantially all of the assets of such corporate Party. Subject to the foregoing, this Agreement shall be binding and shall inure to the benefit of the Parties and their respective heirs, legatees, devisees, personal representatives, successors and assigns.

(1993 Settlement Agreement at 19; Plf. SUF ¶ 26; Def. SUF ¶ 11.)

4

"Accordingly, on March 24, 2017, Apache sent a correspondence to Infoswitch alerting them as to the [underlying litigation] and tendering the request for defense and indemnification" pursuant to the 1993 Settlement Agreement. (Plf. SUF ¶ 27; Def. SUF ¶ 14; Plf. Mot. Ex. A.) "Infoswitch denied Apache's request for a defense and indemnification." (Def. SUF ¶ 15; Plf. SUF ¶ 32; Plf. Mot. Ex. B.)

### B.  Procedural History

Apache commenced this action on November 9, 2018. (*See* Compl.) The Complaint sets forth one claim for breach of contract. (*Id*. ¶¶ 40-47.) Generally, Apache contends that Infoswitch "is required to indemnify and defend [it] against certain losses including the type at issue in the underlying [lawsuit] in accordance with the [1993 Settlement Agreement] at issue." (*Id*. ¶ 41.) Apache further argues that "[t]his obligation arises out of Infoswitch[]'s contractual agreement with Mepaco, Inc., which inures to Apache's benefit pursuant to additional language" in the 1993 Settlement Agreement. (*Id*. ¶ 42.) On January 18, 2019, Infoswitch filed its Answer to the Complaint denying all liability. (ECF No. 5.)

On February 7, 2020, Apache and Infoswitch filed their respective cross-motions for summary judgment. On February 21, 2020, Infoswitch filed an Opposition to Apache's Motion ("Def. Opp.," ECF No. 37), and on February 28, 2020, Apache filed a Reply thereto. ("Plf. Reply," ECF No. 38). On March 6, 2020, Apache filed an Opposition to Infoswitch's Motion ("Plf. Opp.," ECF No. 39), and on March 13, 2020, Infoswitch filed a Reply ("Def. Reply," ECF No. 40).

## II.  LEGAL STANDARD

"The standard for granting summary judgment on a request for a declaratory judgment is the same as for any other type of relief." *Cloverland-Green Spring Dairies, Inc. v. Pa. Milk*

*Mktg. Bd.*, 298 F.3d 201, 210 n.12 (3d Cir. 2002). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The movant bears the initial responsibility for informing the court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 264 F.3d 135, 145 (3d Cir. 2004). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson*, 477 U.S. at 248). A factual dispute is "material" if it might well affect the outcome of the case under governing law. *Id*. (citing *Anderson*, 477 U.S. at 248).

A court must view the facts and draw all reasonable inferences in the non-moving party's favor. *See In re Flat Glass Antitrust Litig.*, 285 F.3d 350, 357 (3d Cir. 2004); *see also Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002) ("In evaluating the evidence, we are required to view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion.") (internal quotation marks and citation omitted). Nonetheless, a court need not credit "[u]nsupported assertions, conclusory allegations, or mere suspicions." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010). Lastly, when ruling on cross-motions for summary judgment, courts should evaluate each motion independently, giving the non-moving party in each instance the benefit of all reasonable inferences. *See Einhorn v.*

*Kaleck Bros.*, 713 F. Supp. 2d 417, 421 (D.N.J. 2010) ("When ruling on cross-motions for summary judgment, the court must consider the motions independently[.]").

**IV.    DISCUSSION**

Apache argues that it is entitled to summary judgment on its breach of contract claim because "Infoswitch was required to indemnify and defend Apache in accordance with the [] 1993 Settlement Agreement."  (Plf. Mot. at 10.)  Apache contends that while it "was not a party to the 1993 Settlement Agreement," the Assignment/Successorship Clause contained therein "was intended to apply to Apache, which acquired the relevant Mepaco trademark and tradename [pursuant to the 1993 Asset Purchase Agreement] from Beacon, [who was] a party to the [1993] Settlement Agreement."  (*Id.* at 11.)  Conversely, Infoswitch argues that it is entitled to summary judgment, and that the breach of contract claim fails because "Apache has not and cannot prove a contract existed between Apache and Infoswitch."  (Def. Mot. at 12.)  Infoswitch further maintains that "[t]he 1993 Settlement Agreement unambiguously states which entities are entitled to a defense and indemnification from Infoswitch under very specific circumstances.  It is indisputable that Apache is not named in the agreement nor has it any evidence of an assignment [as required by the Assignment/Successorship Clause]."  (*Id.*)

The Court will first discuss general principles of contract interpretation and, then, under the facts of this case, will determine whether Infoswitch has a duty to indemnify Apache for the underlying litigation.

//

//

//

A.     **Contract Interpretation Principles**[5]

"The paramount goal of contract interpretation is to determine the intent of the parties." *Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 75 (3d Cir. 2011) (quoting *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 587 (3d Cir. 2009)).  Pennsylvania contract law begins with the "firmly settled" principle that the "the intent of the parties to a written contract is contained in the writing itself." *Bohler–Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 92 (3d Cir. 2001) (quoting *Krizovensky v. Krizovensky*, 624 A.2d 638, 642 (Pa. Super. Ct. 1993)).  "The whole instrument must be taken together in arriving at contractual intent.  Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed." *Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001) (internal citations omitted).  "When a written contract is clear and unequivocal, its meaning must be determined by its contents alone.  It speaks for itself and a meaning cannot be given to it other than that expressed.  [Further, where] the intention of the parties is clear, there is no need to resort to extrinsic aids or evidence." *E. Crossroad Ctr., Inc., v. Mellon-Stuart Co.*, 25 A.2d 865, 866 (Pa. 1965).

B.     **Infoswitch Was Not Required to Defend and Indemnify Apache in the Underlying Lawsuit**

The 1993 Settlement Agreement is clear and unambiguous.  What is equally clear to the Court is that Apache has neither demonstrated that it was a party to the 1993 Settlement

---

[5] Pennsylvania contract law governs this diversity action. *See Lafferty v. St. Riel*, 495 F.3d 72, 76 (3d Cir. 2007) ("[A] federal court must apply the substantive laws of its forum state in diversity actions." (citing *Erie R.R. Co. v. Tompkins*, 34 U.S. 64, 78 (1938))).  Apache argues that "Wisconsin law regarding contract interpretation governs" because the "1993 Settlement Agreement contained a choice of law provision[.]"  (Plf. Mot. at 8.)  However, the 1993 Settlement Agreement does not in fact contain a choice of law provision (*see generally* 1993 Settlement Agreement), rather, upon this Court's review, it is the 1993 Asset Purchase Agreement that contains a Wisconsin choice of law provision (*see* 1993 Asset Purchase Agreement at 21).  Accordingly, the Court will interpret the 1993 Settlement Agreement pursuant to Pennsylvania contract law principles.

Agreement, nor demonstrated that the 1993 Settlement Agreement inures to its benefit via the Assignment/Successorship Clause.  Specifically, Apache has not demonstrated that it was a successor to the 1993 Settlement Agreement or that it was directly assigned the benefits of the agreement.  Thus, the Court concludes that Apache is not entitled to defense and indemnity from Infoswitch pursuant to the 1993 Settlement Agreement.  The Court will discuss this in further detail below.

          1.     *Apache Is Not an Original Signatory to the 1993 Settlement Agreement*

The 1993 Settlement Agreement unambiguously states which parties are signatories to the agreement and which parties are entitled to defense and indemnity: "This settlement agreement . . . is entered into . . . by and among Beacon Metal Products, Inc. . . . Mepaco, Inc. . . . United Dominion Industries, Inc. . . . Infoswitch, Inc. . . . and Sunbeam-Oster Company, Inc. . . . [.]"  (1993 Settlement Agreement at 2, 4, 7, 20-21.)  Accordingly, Apache has not demonstrated that it is a party to the 1993 Settlement Agreement.

          2.     *Apache is Not a Successor to Mepaco and Apache Was Not Assigned the Rights or Benefits of the 1993 Settlement Agreement*

As noted *supra*, the 1993 Settlement Agreement contains an Assignment/Successorship Clause, which states in pertinent part: "This Agreement may not be assigned . . . except that any right, title or interest of any corporate Party arising out of this Agreement may be assigned to any corporation . . . succeeding to the business and substantially all of the assets of such corporate Party.  Subject to the foregoing, this Agreement shall be binding and shall inure to the benefit of the Parties and their respective . . . successors and assigns."  (1993 Settlement Agreement at 19.)

Apache argues that the "successorship clause was intended to apply to [it]" because "Apache succeeded to and was assigned the interests of Mepaco."  (Plf. Mot. at 11.)  In support

of this contention Apache points to the 1993 Asset Purchase Agreement entered into between Mepaco and Apache.  (*Id.*; *see also* 1993 Asset Purchase Agreement at 2.)

First, Apache's argument that it became a successor to Mepaco is unavailing.  The term "successor," albeit undefined by Apache, is normally defined in this context as "[a] corporation that, through amalgamation, consolidation, or other assumption of interests, is vested with the rights and duties of an earlier corporation." *Successor*, *Black's Law Dictionary* (11th ed. 2019) (definition 2).  The Court's review of the Asset Purchase Agreement reveals that Apache only agreed to purchase certain assets, inventory, and trademarks from Mepaco, and that Mepaco remained liable for its own respective liabilities and obligations.  (*See* 1993 Asset Purchase Agreement at 5-6, 9.)  Thus, because Apache only acquired certain assets, and did not assume the liabilities of Mepaco, Apache did not succeed or become a successor to Mepaco.[6]  Moreover, the Court recognizes that there was an existing lawsuit in motion at the time of the 1993 Asset Purchase Agreement, when Apache acquired certain assets of Mepaco, but not its liabilities.  *See* Section I.A, n.4, *supra*.  Specifically, the 1991 lawsuit was still pending at the time that Apache and Mepaco entered into the 1993 Asset Purchase Agreement, which again, was resolved months later via the 1993 Settlement Agreement.  (*See* 1993 Settlement Agreement.)  Therefore, because Apache was acquiring no aspect of the liabilities of Mepaco, it also clearly could not have expected to be covered by the 1993 Settlement Agreement.  In other words, the timing of the Asset Purchase Agreement, which occurred *after* the filing of the 1991 lawsuit but *before*

---

[6] Nevertheless, assuming *arguendo* that Apache was in fact a successor to Mepaco, pursuant to the "subject to the foregoing" language in the Assignment/Successorship Clause, Apache would still need demonstrate that a separate contract was entered into evidencing an assignment to Apache of rights under the Settlement Agreement.  As discussed directly below, Apache has not done so.  A clear reading of the entire Assignment/Successorship provision unambiguously states that an assignment must take place.

settlement of that lawsuit, means that Apache clearly understood they would not be covered by the subsequent Settlement Agreement that resolved the 1991 lawsuit.

Second, the Court notes that under Pennsylvania law, an assignment is a separate agreement between the assignor and the assignee which merely transfers the assignor's rights, leaving them in full force and effect as to the party charged. *See Crawford Cent. Sch. Dist. v. Commonwealth of Pa.*, 888 A.2d 616, 619 (Pa. 2005); *see also Bohem v. Seabury*, 21 A. 674, 675 (Pa. 1891) (finding that "plaintiff was a stranger to the contract, and has shown no right to avail himself of it" because "[t]here was no assignment of the contract."); *see also Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 60 (3d Cir. 2001) ("An assignment . . . is a separate agreement between the assignor and the assignee[.]" (internal quotation marks and citation omitted)). Here, the Asset Purchase Agreement preceded the Settlement Agreement, and therefore, the Court finds that Apache cannot rely on it as evidence of an assignment. Rather, Apache would need to establish that a contract was entered into after execution of the Settlement Agreement which demonstrates an assignment of rights under the Settlement Agreement to Apache. Apache has failed to produce a contract evidencing such an assignment.

In summary, the Court finds that Infoswitch is entitled to summary judgment with respect to Apache's claim for breach of contract because Apache has failed to demonstrate that the 1993 Settlement Agreement inures to its benefit. Accordingly, Apache is not entitled to a defense and indemnification from Infoswitch.

## V.     CONCLUSION

For the reasons discussed above, the Court will deny Apache's Motion for Summary Judgment and grant Infoswitch's Motion for Summary Judgment. An appropriate Order will follow.

**IT IS SO ORDERED.**

                **BY THE COURT:**

                /s/ John Milton Younge
                **Judge John Milton Younge**